The TRAVELERS INDEMNITY COMPANY, Appellant,

v.

Edward L. JARRETT, Sr., Appellee.

No. 4142.

Court of Civil Appeals of Texas.

Waco.

July 11, 1963.

Louis Muldrow, Waco, for appellant.

Minor L. Helm, Jr., Waco, for appellee.

WILSON, Justice.

Cause of loss is the chief issue in this suit on a Texas Standard Homeowner's insurance policy. The insurer says there is no evidence to support the jury findings to the

effect that plaintiff's electric refrigerator was damaged as a result of lightning having cut off its electrical supply.

The policy insured against "loss by lightning." It excluded, as material here, "loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould or other fungi", and contamination. We test appellant's no evidence points, as we are required to do, by considering the record under the rule summarized in Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126.

■ Insured's residence was equipped with 10 separate electrical circuits, each of which was controlled by a separate magnetic circuit breaker. An excessive surge of current in any of the circuits would automatically actuate a corresponding switch in a breaker panel so as to open the circuit, as would a fuse. If the source of such surge of current was from without the house, all 10 switches would be thrown, and the circuit would remain incomplete until the switches were manually returned to an "on" position so as to close the circuit and restore the flow of current. Insured left his home unoccupied for 12 days, all electrical appliances but the refrigerator being disconnected. When he returned he found the freezing mechanism of the refrigerator was stopped; that all 10 circuit breaker switches were thrown to the "off" or neutral position, and a large quantity of food in the refrigerator had putrefied, damaging the refrigerator.

Plaintiff, an electrical engineer, testified that an interior "short" in any circuit would result in disengaging only the circuit breaker for that single circuit; that there had never been an interruption of electric power in the residence before or since this occassion; that a sudden surge of excess electricity from an exterior source would be required to throw 10 switches and break all circuits; that lightning was the only thing he could think of that would have this effect; that lightning striking a power line would create tremendous heat, increasing

voltage and amperage, activating the service line transformer circuit breaker so as to disrupt the service and shunt the current into the path of least resistance; that other suggested causes "probably wouldn't come to the house."

A power company employee's testimony was that there were one or more severe electrical storms in the area during insured's absence; that the breaker on the company's transformer from its transmission line to the feeder line serving insured's section of the city was tripped and closed one time during the electrical storm; that there was a transformer lightning arrester failure which appeared to be from lightning damage. The company's power interruption report showed 3 line failures during the storm, including a conductor which "burned in two" due to lightning. The court restricted insured's evidence concerning other electrical damage from lightning to that in the area of his residence. The interruption report does not show whether fuses or circuit breakers of consumers were affected by the line damage, but the employee testified the only cause of interruption shown was lightning. Although his testimony was equivocal, he attributed the power interruption to such cause.

Another witness, insured's son who lived in the vicinity of plaintiff's residence, testified that concurrently with a severe lightning bolt during the storm, fuses in his home were blown out and his central heating system and air conditioning units were damaged.

Against this record we overrule appellant's points that there was no evidence to support the factual findings concerning lightning as constituting the cause of loss.

Insurer also contends the evidence and a jury finding that the damage to the refrigerator resulted from "contamination, deterioration, rust, rot, mould or other fungi," establish as a matter of law that the loss was not caused by a peril insured against, since the policy excluded loss caused by these; and the loss resulted from

"deterioration" of food. It contends the lightning was a remote, and not a proximate cause. The policy did not exclude all loss by deterioration; it excluded only that by "inherent" deterioration of the property insured. The damage did not result from a fixed attribute of the refrigerator. The policy may be said to exclude damage to the *food* from deterioration, contamination, rot, mould, etc., but food is not the insured property for which recovery was had.

■ The court overruled insured's motion to disregard the jury finding last quoted, but obviously ignored it as immaterial. It was undisputed that if the refrigerator had been empty no loss would have occurred, and that liquids and other content of the spoiled and decomposing food was the damaging factor. It also appears that lightning did not actually strike any part of the house or refrigerator. Where insurance against property damage is only against *"direct"* loss by lightning it has been said the quoted term means "immediate" or "proximate," as distinguished from remote or incidental causes. But a provision insuring against "loss or damage caused by lightning" renders the insurer liable for all known effects of lightning, "and includes all loss or damage which results as a direct and natural consequence of the lightning, notwithstanding other incidental agencies may be instrumental in adding to the loss or damage." 11 Couch, Insurance 2d, Secs. 42.355, 42.357; 15 A.L.R.2d Sec. 3, p. 1024.

■ Even if we apply insurer's criterion, however, we determine there was evidence of probative force that lightning was the dominant, efficient and moving cause which set incidental, resulting, and consequential agencies in operation (though the latter may be nearer in point of time and space to the ultimate result) in a natural and continuous sequence. Foreseeability is not an element. Federal Life Ins. Co. v. Raley, 130 Tex. 408, 109 S.W.2d 972, 974. The resulting condition of the food is not an intervening cause; it is merely an inter-mediate link in the chain of causation. The lightning was not merely a remote cause; and we are unable to say the policy did not insure the loss.

We overrule appellee's cross point.

The judgment is affirmed.