**Harvey JAMESON et al., Appellants,**

**v.**

**Robert Edward MELTON, Appellee.**

**No. 16147.**

Court of Civil Appeals of Texas.

Dallas.

March 8, 1963.

James L. Mitchell and J. Harvey Lewis, Dallas, for appellants.

Brundidge, Fountain, Elliott & Churchill, Dallas, for appellee.

WILLIAMS, Justice.

Action for damages brought by Donna Ruth Jameson, a minor, acting by next friend, Harvey Jameson, against Robert Edward Melton, a minor, in which plaintiff alleged that she had sustained personal injuries as a result of a collision between an automobile she was driving and one operated by defendant. At the conclusion of a jury trial the court submitted the case upon twenty-eight special issues. The jury convicted the defendant Melton of several acts of negligence which proximately caused the collision. The jury also found that the plaintiff, Donna Ruth Jameson, was driving her vehicle at an excessive rate of speed and further that she failed to keep a proper lookout. Each of said acts was found to have proximately caused the collision. The trial court rendered judgment for defendant.

By five points of error appellants complain of the trial court's reiusal to grant a new trial because of the *insufficiency* of the evidence to support the jury's answers to the special issues convicting Donna Ruth Jameson of contributory negligence. We overrule these points and affirm the judgment of the trial court.

In reaching our determination of the issues of "insufficiency of the evidence" points presented we are governed by established rules of law announced by our Supreme Court. Where the issue presented is one of "no evidence" then the question is one of law and a reviewing court considers only the evidence favorable to the verdict. Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114. However, in a case such as this, wherein the question of "insufficiency of evidence" is presented for consideration the question is one of fact which requires this court to consider and weigh all of the evidence in the case, that is to say, the evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. In re King's Estate, 150 Tex. 662, 224 S.W.2d 660; Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126; Harrison v. Chesshir, 159 Tex. 359, 320 S.W.2d 814; "No Evidence" and "Insufficient Evidence" Points of Error, Robert W. Calvert, 38 Tex.L.Rev. p. 361. We have, in obedience to such rule so announced, reviewed all of the evidence in this record relating to the special issues on speed and lookout as to appellant, whether said evidence is favorable to or against the verdict rendered by the jury.

A fair summarization of the essential testimony presents the following all too familiar picture. Three automobiles are involved. Donna Ruth Jameson, age six-

teen, accompanied by three other teen-aged girls, was driving her automobile home from school on the afternoon of April 2d, 1959. Appellee Melton, also sixteen years of age, was driving his automobile home from school at the same time. A Studebaker driven by one Ned Trudnoski (not a party to this case) was also in the vicinity of the other two automobiles at the time. All three automobiles were being driven in a northerly direction on Hampton Boulevard in the City of Dallas, same being a six-lane divided thoroughfare with three lanes for north bound traffic and three lanes for south bound traffic and being divided by a grassy island. According to Melton all three of the automobiles were being operated up a hill with the Trudnoski automobile ahead of the other two. He testified that as he proceeded up this hill he passed the Jameson car, which was in the middle lane, and that he was going around 40 miles per hour and that the Jameson car was going about that fast; that as he pulled ahead of her about a car's length she then pulled up and passed him just as they were topping the hill. He said he then pulled up, passed her again, and that just as they topped the hill he was in the far right-hand lane and the Jameson car was in the middle lane. At that time he observed the Trudnoski car right in front of him, not over a car length away, and since he had bad tires he was afraid to apply his brakes so he elected to speed up his automobile and turn into the lane of traffic occupied by the Jameson car thinking he had time to cut between the two cars. However, the left rear of the Melton automobile hooked the right front of the Jameson automobile causing it to turn over.

Donna Ruth Jameson testified she was in the inside lane, next to the center median; that she knew a car was following her in the same lane and she pulled over to the center lane to let this car pass but when it did not she pulled back to the left inside lane where she was at the time the automobile pulled over and "side-swiped" her car causing it to overturn.

Trudnoski testified that he was traveling about 40 miles per hour when he passed the Jameson automobile and that he estimated she was traveling about the same rate of speed at the time of the accident, which he observed in his rear view mirror. Trudnoski testified if Miss Jameson had slowed down her car "just a little bit" she could have avoided the accident. He also admitted that if she had turned her automobile slightly that the accident could have been avoided.

On the question of proper lookout Miss Jameson testified that she wasn't noticing the Melton automobile very carefully. She said that as he "went to the outside lane, then I didn't pay any more attention to him." She further said that at the time of the accident she was looking "straight ahead" and did not see the Melton car until it actually struck her.

Melton testified that as the two automobiles were driving along passing each other that he was looking at the girls and that the girls were looking at him. He especially said that the driver of the other automobile was looking at him and that he looked at her. Melton said that had Donna Ruth swerved her car to the left at all, even five or six inches, he could have gone by.

Margaret Brewer, one of the girls in the Jameson car, testified that as they were driving along they had turned on the radio and were listening to "Kookie" (identified as a 77 Sunset Strip television star) singing a song about his comb.

Having studied this entire record, and considering all of the testimony both for and contrary to the questioned issues, we have concluded that the jury answers to the issues condemning the Jameson girl of excessive speed, negligence, proximate cause, as well as improper lookout, are supported by sufficient evidence and should not be disturbed.

A case involving very similar facts was decided by this Court in 1961. Arrington, et al. v. Paschall, et al., Tex.Civ.

App., 352 S.W.2d 866. The identical questions were there presented concerning the sufficiency of the evidence to raise the question of improper lookout. As we said in that case, and repeat here, proper lookout is ordinarily a question for the jury. Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. As our Supreme Court in Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, said, the question of negligence and causation, like any other ultimate facts, may be established by circumstantial as well as direct evidence. The jury, said the Supreme Court, is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions from the evidence adduced before it.

■■ As a reviewing court we are not called upon to decide which of the witnesses related the true picture surrounding the unfortunate accident. The resolution of conflicts in the testimony is solely the province of the jury. The jury had before it abundant evidence, both direct and circumstantial, from which it could and did draw reasonable inferences and conclusions relating to the conduct of both parties. The evidence presented justified the jury in its findings that the teen-aged youngsters were engaging in a transitory flirtation as they drove along the street close together, passing each other from time to time and not exercising that degree of care required of a prudent motorist under the existing circumstances. The whole picture presented, including the entertainment on the radio and the passing game between the cars, was more than sufficient in supporting the jury's findings that both drivers were lacking in that degree of care required under the prevailing conditions. We cannot say that the jury was wrong in its decision nor that the findings against the Jameson girl are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust or the result of bias and prejudice. Stehling v. Johnston, Tex.Civ.App., 32 S.W.2d 696, err. ref.; Dyer v. Sterett, Tex.Civ.App., 248 S.W.2d

234, err. ref. n. r. e.; De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95.

 As stated by the Supreme Court in De Winne v. Allen, supra, every person is under a duty at all times to maintain a proper lookout for his own safety, and may not proceed blindly and in disregard to danger that might be reasonably anticipated to exist.

Finding, as did the trial court, ample evidence to support the verdict of the jury on all issues, the appellant's points are overruled.

Judgment affirmed.

BATEMAN, J., disqualified and not sitting.